IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| VICENTE GUZMAN, #1541295 | § | |
| VS. | § | CIVIL ACTION NO.9:10cv111 |
| JANIE COCKRELL, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Vicente Guzman ("Guzman" or "Plaintiff"), an inmate confined in the Byrd Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit under 42 U.S.C. § 1983. Though he is presently confined in the Byrd Unit, the events of this lawsuit took place at the Duncan Unit. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

**I.    FACTS**

The original complaint was filed on August 23, 2010. On March 15, 2011, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Office representative Phillip Brooks and Warden Dwayne Dewberry testified under oath about prison policies and information

1

contained in the Plaintiff's prison records. Nurse Carrie Hucklebridge testified as to the contents of Plaintiff's medical records.

Plaintiff claims that he is a geriatric inmate, over age 55. When he was previously housed at the Duncan Unit, instead of being assigned to a bottom bunk consistent with his age, he was assigned to a top bunk. None of the upper bunks at the Duncan Unit are equipped with a ladder or an assistive device to get into the bed. He testified that on May 14, 2010, he was forced to climb onto the top bunk in his cell and, with no ladder to assist him, he fell back down to the floor, fracturing his ribs and collar bone.

He testified that while trying to get treatment, Plaintiff found that there is no medical staff on hand at the Duncan Unit between 6:00 pm and 6:00 am. Another prisoner called for help and Plaintiff was escorted to the Sergeant's Desk. Defendant Sgt Primrose took Plaintiff to the Supervisor's Office where Plaintiff explained his injury and took his shirt off. Sgt Primrose saw Plaintiff's swelling and that he was in pain, but told him that he could do nothing because there were no medical personnel on staff after 6:00 pm. He told Plaintiff to return to his bunk and that he would leave a message for Plaintiff to be called out for medical examination in the morning.

The next morning, Plaintiff was called to the Sergeant's Desk and explained what happened to Lt McKnight. Lt McKnight saw his shoulder popped out and took Plaintiff to the Duncan Unit Infirmary. There, Plaintiff was examined by LVN Rebecca Armstrong, who then gave him Ibuprofen and made arrangements for Plaintiff to go to Woodland Heights Memorial Hospital in Lufkin, Texas.

At the hospital, Plaintiff was seen by Dr. Malhi, who examined him and ordered X-rays and a CAT scan, while he was given a pill and a shot for the pain. By noon, Dr. Malhi re-examined

Plaintiff and determined he had fractured his collar bone and two ribs. Dr. Malhi ordered a strap for his arm and prescribed an undefined pain medication. That afternoon, Plaintiff was returned to the Duncan Unit.

Plaintiff testified further that in 1980, before he was incarcerated, he had a motorcycle accident in which his leg suffered a compound fracture and was nearly amputated. It still swells up and hurts in winter. On November 16, 2008, he was sent to the Texas Department of Criminal Justice, Correctional Institutions Division. He was in another Unit originally and had been for over a year when he was transferred to the Duncan Unit. Other units he had seen had ladders to the top bunks, including the Middleton Unit and the Ware Unit. At the Duncan Unit, however, no bottom bunk was available for him and the top bunks had no ladders. The doctor assigned to the Unit would not give him medical relief for a bottom bunk. He filed a Step 1 grievance on March 22, 2010, number 2010121909, stating these facts and asserting that he was afraid to use the top bunk because of no assistive device and the need to jump down from the bunk with his bad leg. This grievance predated Plaintiff's injury. However, the response to his grievance was that there was no medical indication for assignment to a bottom bunk and no medical indication for security to weld ladders or suggest step ladders or any boxes to get into the top bunk.

Plaintiff further testified that he has now been moved to the Byrd Unit, where there are steps on the bottom bunks to get up into the top bunks, but that he has now been assigned a bottom bunk in any case.

He stated he is suing Warden Cockrell because he addressed his Step 2 grievance to her and nothing was done; further, she bypassed TDCJ classification policy by sending 500 geriatric inmates to housing where there are no ladders.

He is suing Judy Tobias as the Duncan Unit Safety Officer. He asserts she was aware of injuries in the bunks and "had to know" they were unsafe.

He is suing Chris Smith, the Unit Operations Review Supervisor because he should have been aware that having no medical assistance at a geriatric unit is a risk and that a population of 50-plus year-old inmates with health hazards require a 7/24 medical presence.

He is suing Major Virgil McMullin because he is aware of the safety hazard issue but continued to simply write disciplinary cases on inmates who refused assignment to top bunks or housing where there were only top bunks available.

He is suing Program Supervisor Shirley A. Self as a Classification Officer at the Duncan Unit who assigns inmates to bunks; he asserts she assigned inmates with bottom bunk restrictions to top bunks.

He is suing TDCJ Classification Chief Joni White as the person responsible for assigning offenders to different Units throughout the system. He contends she should have been aware of the bunk deficiencies at the Duncan Unit before assigning older inmates there.

He is suing Sgt Primrose at the Duncan Unit as the sergeant in charge at the time of the injury. Sgt Primrose asked him about his injuries and informed Plaintiff there was no medical assistance after 6:00 pm. He sent Plaintiff back to his bunk, but should have called for medical assistance or transported Plaintiff to a Unit with medical personnel.

Finally, he is suing an Unknown Lieutenant, who Plaintiff avers was on duty but did not direct Sgt Primrose in proper procedures during his medical emergency. He asserts the lieutenant failed to supervise and he, and Sgt Primrose, did not follow policy or procedures and should have called for emergency medical services.

Warden Dewberry testified that he is aware of some Units where medical assistance is not available on-site for as long as 12 hours at a time, such as the Powledge and Beto Units. However, each Unit has a direct line to emergency medical services. He testified it is up to the ranking officer to call EMS if medical services are needed.

Nurse Huckelbridge testified that on May 15, 2010, Plaintiff was brought to the Duncan Unit Infirmary where it was determined he needed X-rays and other examination. He was sent to the Woodland Heights Memorial Hospital. There, a CAT scan showed three fractures and he was prescribed rest; a sling for his arm; and medication. She testified the medication was not available at the Duncan Unit, but was changed to a narcotic pain medication and that Plaintiff was given a pass for his sling.

Regional Grievance Office representative Brooks testified that Plaintiff had exhausted his claims. Mr. Brooks presented Plaintiff's grievance, medical and general records. Plaintiff gave permission for the Court to review his records as presented.

## II. DISCUSSION AND ANALYSIS

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49,

108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

Plaintiff does not explicitly state what claim he makes against each Defendant, except that he generally describes the conduct he asserts is improper. In most of the Defendants' instances, that conduct amounts to negligence in not having placed ladders or rungs or some sort of assistive mechanism for infirm and older inmates to get into the top bunks. In the cases of Warden Cockrell, Major McMullin and the Unknown Lieutenant, he appears to be asserting that they are responsible because of their supervisory positions. He also asserts that in the cases of Sgt Primrose, Safety Officer Tobias and Operations Review Supervisor Smith, they were aware of a population of geriatric inmates, including Plaintiff, but failed to provide on-site, 24-hour medical assistance or, alternatively, failed to call for emergency medical services when he personally was injured. The latter claim appears to sound in deliberate indifference.

### A.     Negligence

The Supreme Court has held that many acts that might constitute a violation of state tort law - potentially, such as the facts in this case - do not amount to constitutional violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). Furthermore, negligence does not provide a basis for relief in a federal civil rights lawsuit. *See Daniels*

*v. Williams*, 474 U.S. 327 (1986); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988). In the context of safety and medical claims, the Supreme Court emphasized that a claim of negligence does not suffice and that a prisoner must show that the defendants were deliberately indifferent. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Here, to the extent that Plaintiff claims that certain persons carried out their duties assigning inmates to Units, cells and bunks in the face of missing top bunk ladders, those claims sound in negligence. Those persons include Warden Cockrell, Major McMullin, Unit Classification Officer Self, and TDCJ Classification Officer White. Accordingly, the negligence-based claims against these actors will be dismissed.

### B. Respondeat Superior

Plaintiff has also claimed that Warden Cockrell, Major McMullin and Unknown Lieutenant are liable merely for their supervisory capacities or, similarly, because one or more of them "failed to prohibit" his assignment to a top bunk or a Unit with deficient top bunks.

In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). None of these individuals participated in the alleged acts of misconduct. They were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828

F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied by Plaintiff's bare allegations and supplemental testimony at the *Spears* hearing. Therefore, Plaintiff's *respondeat superior* claims fail and these supervisory personnel will be dismissed.

    **C.**    **Deliberate Indifference**

The remaining claims appear to focus on the fact that medical assistance is either not made available on a 24-hour basis or was not properly summoned for Plaintiff's medical emergency. These claims sound in deliberate indifference.

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment,' and this includes 'indifference . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Erickson v. Pardus*, 551 U.S. 89, 90, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "It is not, however, every injury . . . that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence on the part of prison officials is not enough. *Id.* at 835. The deliberate indifference standard permits

courts to separate omissions that amount to an intentional choice from those that are merely unintentional oversights. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997).

Here, the Plaintiff has alleged facts that arguably support an inference that Sgt Primrose, Safety Officer Tobias and Operations Review Supervisor Smith either failed to make medical assistance available around the clock to a Unit housing geriatric inmates or failed to summon EMS personnel when Plaintiff was injured. This is best characterized as a claim of deliberate indifference. These three individuals must answer the claims against them.

### III. CONCLUSION

It is therefore

**ORDERED** that the Plaintiff may proceed with his deliberate indifference claim against Defendants Primrose, Tobias and Smith. It is further

**ORDERED** that the Plaintiff's remaining civil rights claims against Defendants Cockerell, McMullin, Self, White and Unknown Lieutenant are **DISMISSED** with prejudice.

So **ORDERED** and **SIGNED** this **15** day of **April, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE